PEOPLE OF the STATE OF
ILLINOIS, et al.,
Petitioners,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents,

and

Burlington Northern Railroad
Company, Intervening
Respondent.

Nos. 83-3228, 84-1414.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1984.

Decided Jan. 3, 1985.

Gordon P. MacDougall, Washington,
D.C., Steven C. Weiss, Diamond & Weiss,
Chicago, Ill., for petitioners.

Richard J. Osterman, Office of Gen.
Counsel, I.C.C., Washington, D.C., for re-
spondents.

Douglas J. Babb, Law & Govt. Affairs,
Dept., Burlington Northern R.R. Co., St.
Paul, Minn., for intervening respondent.

Before WOOD and POSNER, Circuit
Judges, and DUMBAULD *, Senior District
Judge.

* The Honorable Edward Dumbauld, Senior Dis-     trict Judge, of the Western District of Pennsylva-

DUMBAULD, Senior District Judge.

This is a proceeding under 28 U.S.C. § 2321 to review orders of the Interstate Commerce Commission (I.C.C.)[1] permitting abandonment by the intervenor Burlington Northern Railroad Company (BN) under 49 U.S.C. 10903(a) of service[2] over approximately 50 miles of track in Illinois. Petitioners urge that service over part of the track involved should be continued, in accordance with *Indiana Sugars, Inc. v. I.C.C. and U.S.*, 694 F.2d 1098 (7th Cir. 1982). However, we uphold the Commission's decisions, finding that the facts in the case at bar and in *Indiana Sugars* are not sufficiently similar, and that in any event the petitioners' proposal to preserve rail service for some shippers by rerouting traffic was an afterthought and not presented to the Commission in timely fashion by petitioners.

### I—The ICC Proceedings

BN filed on September 2, 1983, its application for abandonment of service from Earlville to Lyndon (both points being in Illinois). Earlville is located on BN's main line from Chicago westward to Aurora, Earlville, Mendota and other points. Proceeding westward from Earlville on the route proposed to be abandoned, the intermediate points are Amboy, Rock Falls, Sterling, Agnew, and Lyndon. From Mendota the BN also has another track to Denrock, and from Denrock to Lyndon.

No shipper west of Sterling protested the abandonment, and no traffic had moved for ten years over the Sterling-Lyndon portion of the route. Most of the shippers who protested were located between Rock Falls and Sterling.[3] Accordingly, the Commission on October 13, 1983, bifurcated the application, treating the Sterling-Lyndon segment in what was called the A-proceeding, and the Earlville-Sterling segment in what was called the B-proceeding. No party objected to bifurcation, as they were entitled to do under the I.C.C. rules: 49 CFR 1152.25(e) and 49 CFR 1011.7(b)(1). Thereupon the Commission's review board granted the application with respect to the A-proceeding on November 3, 1983. On December 12, 1983, the Commission denied a petition to reopen that decision. Not until that petition, served November 28, 1983, did protestants' mention the possibility of handling traffic to and from the Sterling and Rock Falls shippers via Mendota and Denrock rather than directly via Amboy. The Commission on February 2, 1984, granted the abandonment between Earlville and Sterling involved in the B-proceeding. In this Court No. 83–3228 seeks review of the A-proceeding, and No. 84–1414 of the B-proceeding.

### II—APPLICABLE LAW

We are not persuaded that appellants have offered sufficiently substantial grounds to upset the Commission decisions in either proceeding. Those decisions were sustainable under the Customary standards relating to the carrier's financial loss[4] (including opportunity costs)[5] weighed

---

nia, sitting by designation.

1. The Act of January 2, 1975, 88 Stat.1917, substituted review by Courts of Appeals for the review by three-judge District Courts under the procedure established by the Urgent Deficiencies Act of October 22, 1913, 38 Stat. 208, 219–221, which abolished the ill-starred Commerce Court. See Frankfurter and Landis, *The Business of the Supreme Court* (1927) 170–73.

2. For simplicity we speak of abandonment of service, rather than distinguishing between abandonment of BN's own tracks and discontinuance of service by BN over approximately 5 miles of Chicago & Northwestern Railway Company's tracks over which BN has trackage rights.

3. Technically, of course, their protests were against the entire application as filed by BN.

4. As to the tests for abandonment, see *Indiana Sugars*, 694 F.2d at 1100 [including the trend in Congressional policy in favor of eliminating financial losses and shortening the time for Commission deliberation in abandonment proceedings]; *People of the State of Illinois v. I.C.C. and U.S.*, 709 F.2d 1186, 1191, 1193–94 (7th Cir. 1983); see also 722 F.2d 1341 at 1347.

5. *People of the State of Illinois v. I.C.C. and U.S.*, 698 F.2d 868, 875 (7th Cir.1983).

against shippers' needs; and reliance by appellants on *Indiana Sugars* does not lead to a different conclusion.

The only evidence in support of service to Sterling and Rock Falls via Mendota, Denrock, and Lyndon is the comment by the union representative Patrick W. Simmons that he saw no difficulty in resuming operations from Denrock to Sterling (which he said had been provided up through August 1975). However, other testimony indicated that the track in the A-case segment was in worse condition than the B-segment, since there had been no use of the track since 1975 except for storage of cars.[6]

It should be noted that service via Denrock is circuitous. Westbound movement to Denrock would be followed by eastbound movement to Lyndon, Sterling, and Rock Falls. Inquiry regarding the operational and economic feasibility of movement from Earlville to Mendota and thence to Denrock would be necessary. The mileage to Denrock from Earlville would be greater than over the B-segment, and from Denrock the suggested resumption of service would utilize a line from Denrock to Lyndon which had generated no traffic and which had stagnated without any train service since August, 1975.

The Commission under these circumstances could properly decide that routing over its own lines is ordinarily a matter to be determined by the carrier in its discretion, and that the I.C.C. decision to authorize abandonment of the defunct Lyndon-Sterling A-segment should not be reopened simply on the strength of the suggestion made by Mr. Simmons to utilize it as a means of serving shippers in the Sterling-Rock Falls area.

Nor does *Indiana Sugars, supra,* benefit appellants. In that case the serious hardship to the shipper if deprived of rail transportation for supplies the transportation characteristics of which called for movement by rail in pursuance of the National Transportation Policy, as well as the extremely skimpy showing of alternative motor transportation, are important factors distinguishable from the situation in the case at bar. See the full explanation at 694 F.2d at 1101.

■ In the case at bar, however, the record shows the existence of motor transportation which is actually being used by the shippers, rather than the merely theoretical availability of motor carriers. Likewise there was no demonstration of special need for long haul direct movement of commodities particularly requiring rail transportation. Moreover, the trackage required to serve the shipper in *Indiana Sugars* was a portion of the trackage sought to be abandoned in the carrier's application. In the case at bar the alternative mode of rail service suggested by protestants would have required the use of other trackage not involved in the abandonment proceeding, and consideration of the factors relating thereto would have unduly expanded the scope of the pending proceeding (or at least the Commission would be warranted in so concluding in view of its authority to regulate procedural aspects of its work-load and in view of protestants' lack of diligence in failing to raise the issue in more timely fashion).

■ Finally, little need be said in order to dispose of appellants' argument that the Commission proceedings were invalid because the notice stated that protestants' statements should be verified under oath. In fact nine of the ten protests filed were unverified, and no showing has been made that the ardor of any potential protestant was "chilled" by reason of the wording of the notice. This deviation from I.C.C. practice [see 49 C.F.R. 1152.2] was clearly harmless error. *People of the State of Illinois v. I.C.C. and U.S.,* 722 F.2d 1341, 1346, 1348 (7th Cir.1983).

---

**6.** There is no reason to reject the Commission's conclusion that BN did not deliberately downgrade service by lessening expenditures for maintenance. There was plausible testimony that loss of traffic preceded diminution of maintenance expenditures rather than being caused by it.

Accordingly the decisions of the Commission must be upheld.

PETITION FOR REVIEW DENIED.